IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE BIRKS,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>C. A. TERHUNE, et al.,<br><br>　　　　Defendants.<br>_____/ | No. CIV S-05-1105 LKK EFB P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

　　　Plaintiff is a state prisoner proceeding *pro se* and *in forma pauperis* with a civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's April 24, 2006, amended complaint which claims that, during a medical examination, defendant, Correctional Officer McGuire, used excessive force against plaintiff, denied him a confidential examination, and filed a false incident report. On November 3, 2006, defendants filed an unenumerated Rule 12(b) motion to dismiss. Fed. R. Civ. P. 12(b). The motion alleges that plaintiff failed to exhaust his administrative remedies prior to filing suit, as required by the Prison Litigation Reform Act. On September 26, 2007, the district court granted defendants' motion to dismiss as to all defendants except defendant McGuire.

////

////

1

1    Now before the court is defendant's May 3, 2007, motion for summary judgment as it
2 pertains to McGuire. In spite of prior admonitions as to the requirement to file timely
3 oppositions to motion, plaintiff failed to file an opposition brief. Instead he filed on May 21,
4 2007, a motion for further discovery which the court construes as a request to defer ruling on
5 summary judgment pursuant to Fed. R. Civ. P. 56(f) and an opposition to summary judgment.

**I.    Plaintiff's Request for Discovery**

Plaintiff's May 21, 2007, motion is styled as a "motion requesting court to make an order under Rule 37(A)." It is apparent that the motion seeks to compel discovery. Insofar as it may be construed as a request under Rule 56(f) to postpone consideration of summary judgment until after completion of discovery, plaintiff has not met the requirements for that request. First, plaintiff fails to make the showing required by Rule 56(f). Second, the time for completion of discovery has long since passed.

Plaintiff's burden under Rule 56(f) is significant:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f). This standard requires the party seeking a continuance to "identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006). Plaintiff has not identified any specific fact(s) that further discovery would reveal. Nor has he shown how even the general facts he alludes to would in any way preclude summary judgment. He attempts to create a factual dispute as to whether there was a prison policy that, during a lockdown, medical personnel were not permitted to be left alone with an inmate due to increased security concerns. He also disputes whether there was a policy that under these circumstances waist chains are not to be removed. To defeat summary judgment, the factual dispute over the existence of the policy must be both genuine and material. It is neither.

1    Plaintiff seeks information regarding any security mandate that, during a medical
2 examination, restraints remain on an inmate and custody officials remain in the examination
3 room. He also seeks the names of inmates with whom defendant McGuire had similar
4 experiences during medical exams. Discovery as to these issues is simply immaterial.
5 Regardless of whether such a policy exists, either as to the presence of security officers or the
6 non-removal of waist chains during a lockdown, plaintiff has no constitutional right to either to
7 have security personnel removed or to have the waist chains removed. Moreover, plaintiff does
8 not allege a claim based on his being kept in restraints. In short, whatever dispute plaintiff seeks
9 to create in that regard is immaterial to the outcome of his claims on the merits. His claims fail,
10 as discussed below, because no such right exists under the Constitution.

11    The names of inmates whom defendant McGuire previously had to restrain during
12 medical examinations are also immaterial to his claims. The court's inquiry is whether the force
13 in question here was excessive.

14    Finally, the request for further discovery is untimely. The scheduling order entered on
15 November 14, 2006, set the discovery cut-off date as March 9, 2007. Plaintiff filed his motion to
16 compel nearly two months after the close of discovery.[1] He has not shown good cause for
17 reopening discovery and his motion is therefore denied for the additional reason that it is
18 untimely.

19 **II.    Facts**

20    Plaintiff is an inmate in the custody of the California Department of Corrections and
21 Rehabilitation (CDCR) and is currently incarcerated at High Desert State Prison in Susanville,
22 California. Plaintiff's Verified Amended Compl. ("Comp."), at 1. Defendant McGuire is an
23 employee of the CDCR, and works at High Desert State Prison as a correctional officer. *Id.*

---

[1] Although the remaining dates in the scheduling order were later vacated due to an impending final pretrial conference and trial date, the court did not reopen or otherwise extend the time for completion of discovery. *See* May 16, 2007, Order.

1    Defendant McGuire has been a Correctional Officer employed by the California
2 Department of Corrections and Rehabilitation (CDCR) since 1989. Defs.' Mot. for Summ. J.,
3 Exh. B, Decl. of D. McGuire ("McGuire Decl."), ¶ 1. He has been a Correctional Officer at
4 High Desert State Prison since August 1996. *Id.* He was a Medical Officer in March 2004. *Id.*
5    In early March 2004, defendant McGuire was present during a medical examination of
6 plaintiff by Dr. Mangis in his office. Defs.' Mot. for Summ. J., Exh. A, Deposition of Lawrence
7 Birks ("Birks Dep."), at 16:18-24; 19:11-17; McGuire Decl., at ¶ 3.
8    The examination occurred during a lockdown. Comp., at 8; McGuire Decl., at ¶ 3.
9 Defendant states that plaintiff demanded that defendant McGuire remove both of his waist cuffs,
10 rather than one, during the examination, but defendant McGuire refused. Plaintiff also insisted
11 that defendant McGuire leave the room while Dr. Mangis conducted the examination, but
12 defendant refused. Birks Dep., at 14:25-15:8; 19:12-14; 21:24-22:7; McGuire Decl., at ¶ 4.
13    Officer McGuire testified that it was the institution's policy that, during a lockdown,
14 medical personnel were not permitted to be left alone with an inmate due to increased security
15 concerns. He further testified that under these circumstances, it was also against security
16 protocol to remove both waist cuffs. McGuire Decl., at ¶ 4.
17    Dr. Mangis, the examining doctor, did not tell defendant McGuire to leave the room or
18 insist that he remove both waist cuffs during the medical examination. Birks Dep., at 34:2-7;
19 36:20-37:22; McGuire Decl., at ¶ 4.
20    Defendant McGuire perceived plaintiff to be upset at him because of his refusal
21 to uncuff both of plaintiff's hands and his refusal to leave plaintiff alone with the physician in
22 the small examining room. McGuire also perceived plaintiff to be upset at Dr. Mangis for not
23 insisting that McGuire remove the cuffs and leave the room. McGuire Decl., at ¶ 5.
24    After plaintiff continued to object to McGuire's presence and refused to continue with
25 the examination, Dr. Mangis asked McGuire to get the necessary paperwork to write a CDC
26 115-Rule Violation Report. Birks Dep., at 19:11-25. McGuire Decl., at ¶ 6. McGuire then

4

stepped out of the room to retrieve that paperwork. Birks Dep., at 20:8-11; McGuire Decl., at ¶ 6.

Defendant McGuire's view of the examination room was partially obstructed as he stepped through the doorway and turned into the hallway. McGuire Decl., at ¶ 6. Plaintiff claims that he then got up from the examination table to pick up a wool cap that he had dropped on the floor accidentally. Birks Dep., at 20:12-17. As McGuire was returning, he did not know what plaintiff was doing and he could not see the physician through the doorway, but he claims that he saw plaintiff get up from a chair and move toward the examination table. McGuire Decl., at ¶ 7. McGuire had already perceived that plaintiff was upset over McGuire's refusal to remove the cuffs and leave the room. Based on these observations, McGuire considered plaintiff's movements to be a possible hostile act. McGuire concluded that plaintiff's actions violated the institution's policy that restrained inmates during lockdowns were not allowed to get up from their chairs and move without asking for permission. McGuire Decl., at ¶ 7.

Plaintiff testified that McGuire then grabbed plaintiff by the throat, pushed him back into the chair, and ordered him to stay seated. Birks Dep., at 20:16-25; 21:8-12. McGuire states that he grabbed plaintiff by the shoulders and pushed him back into the chair. McGuire Decl., at ¶ 8.

Ultimately, McGuire escorted plaintiff to a holding cell. Birks Dep., at 21:14-15; McGuire Decl., at ¶ 8. Plaintiff was then medically evaluated by Medical Technical Assistant C. Barton, who noted no injuries. Defs.' Mot. for Summ. J., Exh. C-1, Decl. of D. Christie and attached Unit Health Records, at 9; Exh. D-1, Decl. of D. Hanlon and attached CDC Central File Records, at 21.

Plaintiff's medical records show that he had pre-existing complaints of back pain since his incarceration at CSP-Corcoran from 1995-1997, which continued after March 2004 without mention of any injury from the incident. Exh. C-1, at 1-8; Exh. D-1, at 3.

No health care personnel has said that defendant McGuire's actions caused plaintiff injury. Birks Dep., at 54:2-4.

Plaintiff was issued a CDC 115-Rule Violation Report, for Resisting Staff Requiring Use of Physical Force from the March 2004-incident. Defs.' Mot. for Summ. J., Exh. E, Decl. of S.L. Chapman, at ¶¶ 3, 5; Exh. E-1; Exh. D-1, at 4-9.

Lieutenant S.L. Chapman conducted the hearing on the Rule Violation Report, found plaintiff guilty of the offense, and assessed a 90-day credit loss and a 90-day loss of yard privileges. Exh. E, Decl. of S.L. Chapman, at ¶ 4; Exh. E-1; Exh. D-1, at 7 and 23.

Lt. Chapman's written decision on the Rule Violation Report describes the evidence upon which he based his guilty verdict. Exh. E, Decl. of S.L. Chapman, at ¶¶ 5-10; Exh. E-1 through E-4; Exh. D-1, at 4-22.

## III.  Summary Judgment Standards

Summary judgment is appropriate when there is no genuine dispute over a material issue of fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).[2] The standards under Rule 56 to determine whether there is a "genuine issue of material fact" are well established:

> [T]he Supreme Court, by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment. First, the Court has made clear that if the nonmoving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Second, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis added). Finally, if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). No longer can it be argued that *any disagreement* about a material issue of fact precludes the use of

---

[2] On January 20, 2006, the court informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland,* 154 F.3d 952, 957 (9th Cir.1998) (en banc), *cert. denied,* 527 U.S. 1035, 119 S.Ct. 2392, 144 L.Ed.2d 793 (1999), and *Klingele v. Eikenberry,* 849 F.2d 409, 411-12 (9th Cir.1988).

summary judgment.

*California Arch. Bldg. Prod. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.), *cert. denied,* 484 U.S. 1006 (1988) (parallel citations omitted) (emphasis added). In short, there is no "genuine issue as to material fact," if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Grimes v. City and Country of San Francisco,* 951 F.2d 236, 239 (9th Cir.1991) (quoting *Celotex,* 477 U.S. at 322). There can be no genuine issue as to any material fact where there is a complete failure of proof as to an essential element of the nonmoving party's case because all other facts are thereby rendered immaterial. *Celotex,* 477 U.S. at 323.

**IV.   Discussion**

    **A.   Plaintiff's Claim of Excessive Force**

Plaintiff claims that defendant McGuire used excessive force in violation of the Eighth Amendment when he grabbed plaintiff by the throat and pushed him down onto a chair. Plaintiff claims that this caused his back to be re-injured.

When a prison official stands accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). In determining whether the use of force was wanton and unnecessary, it is proper to consider factors such as the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7.

Here, defendant argues, the claim of excessive force against McGuire does not include evidence upon which it can reasonably be concluded that his application of force rose to the level of a constitutional violation. Defendant's filings have demonstrated that there was a need for the

7

application of force. At the time of plaintiff's medical appointment, the institution was on lockdown and heightened security measures were being employed. Plaintiff was upset that, under those measures, he could not be uncuffed and that defendant McGuire would not leave the examination room. While plaintiff apparently disputes whether a policy or rule existed requiring those security measures, he plainly has no constitutional right to be uncuffed or unattended by prison security personnel at the time in question.

Defendant adduces evidence, which plaintiff disputes, that plaintiff was acting belligerently prior to defendant's use of force. This disputed fact is immaterial to the outcome of this motion, however, because the use of force was constitutional based on the facts that are undisputed. The undisputed facts show that plaintiff was upset with the presence of the defendant officer at his examination and the failure to remove the waist chains and that he chose to end his medical appointment rather than be examined in defendant's presence. Plaintiff's decision provoked Dr. Mangis to request that defendant leave the room to retrieve a CDC form 115 to write a Rules Violation Report regarding plaintiff's behavior. McGuire left the room, and upon returning saw that plaintiff had risen from a chair and moved toward the examination table. Plaintiff states that he was merely standing to retrieve a hat that he had dropped to the floor and therefore the use of force was excessive. Regardless of the reason for plaintiff standing and moving as he did, the objective perception by McGuire remains the same. He saw plaintiff's action in rising and moving about the examination room and knew plaintiff to be upset. It was not unreasonable to use some degree of force to restrain him. The amount of force defendant McGuire used consisted of grabbing plaintiff and sitting him down in the chair. There is no evidence that force was applied for any purpose other than to maintain or restore discipline. Plaintiff has failed to submit evidence that defendant's use of force was applied maliciously or sadistically. On the other hand, defendant has submitted evidence that his use of force in returning plaintiff to his chair was necessary to restore order under circumstances where the institution was already under lockdown.

Given the circumstances of the lockdown and attendant heightened security measures, as described above, the need for the use of force was reasonably related to the amount of force used. McGuire perceived plaintiff to be upset because he did not remove the cuffs. McGuire left the room briefly to get a CDC form 115 to record a rules violation by plaintiff that McGuire has just witnessed. When he returned, McGuire reasonably perceived that plaintiff was still exhibiting hostile behavior. McGuire's response was to grab plaintiff and force him back into the chair from which he had risen. Plaintiff does not allege any further use of force against him by defendant McGuire. The force used was limited in terms of its reasonableness, temperance, and relation to its necessity.

The extent of injury suffered by an inmate is one of the factors to be considered in determining whether the use of force is wanton and unnecessary. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Not every malevolent touch by a prison guard gives rise to a federal cause of action; the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force. *Id*. at 9-10. Guards may use force only in proportion to the need in each situation. *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir.1979).

The records show that plaintiff was found to have sustained no injuries after the incident, that his pre-existing complaints of back pain continued after March 2004 without mention of any injury from the incident, and no health care personnel said that defendant McGuire's actions caused plaintiff any injury. Exh. D-1, at 21. Indeed, the medical report completed following the incident indicates that plaintiff sustained no injuries following a "use of force." *Id.* Further, a physician's progress note dated one month following the incident states that plaintiff "complains of back pain with no precipitating incident ... is able to accomplish all 6 of the low back maneuvers," and has "[f]ull rotation to both left and right." Exh. C-1, at 1. Plaintiff has not produced evidence upon which a reasonable jury could rely to conclude that McGuire used anything other than *de minimis* force. That force did not rise to the level of an Eighth

Amendment violation. *Hudson*, 503 U.S. at 9-10. The court therefore recommends that defendant McGuire's motion for summary judgment be granted.

### B. Plaintiff's Claim of Denial of Confidential Medical Care

Plaintiff argues that McGuire denied him a confidential medical examination. However, he has no constitutional right to an exam free of the presence of prison security personnel. The Supreme Court has reasoned that, while persons imprisoned for crime enjoy many protections of the Constitution, it is also clear that imprisonment carries with it the circumscription or loss of many significant liberties. *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979). These constraints on inmates, and in some cases the complete withdrawal of certain rights, are "justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948); *see also Bell v. Wolfish*, *supra*, 441 U.S. at 545-546 and cases cited; *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974). The curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of "institutional needs and objectives" of prison facilities, *id.*, chief among which is internal security. *See Pell v. Procunier*, 417 U.S. 817, 823 (1974).

The Supreme Court, in *Hudson v. Palmer*, 468 U.S. 517, addressed the central question of whether there exists a reasonable expectation of privacy in a prison cell. The Court held that:

> Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct. Inmates have necessarily shown a lapse in ability to control and conform their behavior to the legitimate standards of society by the normal impulses of self-restraint; they have shown an inability to regulate their conduct in a way that reflects either a respect for law or an appreciation of the rights of others. Even a partial survey of the statistics on violent crime in our Nation's prisons illustrates the magnitude of the problem. During 1981 and the first half of 1982, there were over 120 prisoners murdered by fellow inmates in state and federal prisons. A number of prison personnel were murdered by prisoners during this period. Over 29 riots or similar disturbances were reported in these facilities for the same time frame. And there were over 125 suicides in these institutions. *See* Prison Violence, 7 Corrections Compendium (Mar. 1983). Additionally, informal statistics from the United States Bureau of Prisons show that in the federal system during 1983, there were 11 inmate homicides, 359 inmate assaults on other inmates, 227 inmate assaults on prison staff, and 10 suicides. There were in the same system in 1981 and 1982 over 750 inmate assaults on other inmates and over 570 inmate assaults on prison personnel.

> Within this volatile "community," prison administrators are to take all necessary steps to ensure the safety of not only the prison staffs and administrative personnel, but also visitors. They are under an obligation to take reasonable measures to guarantee the safety of the inmates themselves. They must be ever alert to attempts to introduce drugs and other contraband into the premises which, we can judicially notice, is one of the most perplexing problems of prisons today; they must prevent, so far as possible, the flow of illicit weapons into the prison; they must be vigilant to detect escape plots, in which drugs or weapons may be involved, before the schemes materialize. In addition to these monumental tasks, it is incumbent upon these officials at the same time to maintain as sanitary an environment for the inmates as feasible, given the difficulties of the circumstances.

*Hudson*, 468 U.S. at 526-27. The same rationale is applicable here, where the safety of medical personnel is at issue during a medical interview with an inmate. During a period of heightened concern for security in the prison occasioned by the lockdown, the officer personally observed an angry and seemingly less than cooperative inmate. Refusing to leave the inmate unattended with the doctor was not unreasonable nor offensive to the Fourth Amendment under these circumstances.

> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We believe that it is accepted by our society that "[l]oss of freedom of choice and privacy are inherent incidents of confinement.

*Id.* at 527-28

The court therefore recommends that defendant's motion for summary judgment be granted on this claim as well.

**C. Plaintiff's Claim that Defendant Filed a False Incident Report**

Plaintiff claims that McGuire filed a false Rules Violation Report against him following his medical examination. Even assuming that allegation is true, although there is ample evidence it is not, it is clear that McGuire's report did not infringe upon any liberty interest protected by the Due Process Clause. Under certain circumstances, of course, states may create liberty interests that are protected by the Due Process Clause. *See Wolf v. McDonnell*, 418 U.S. at 556.

11

As the Supreme Court held in *Sandin v. Conner*, 515 U.S. 472 (1995), however, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484 (internal citations omitted).  No such interest is implicated by the facts of this case.

As a result of the filing of the disciplinary report, for which he was found guilty after hearing, plaintiff lost 90 days credit and 90 days yard privileges.  This loss is not an "atypical hardship" as contemplated by *Sandin*.  The alleged making of a false charge, however reprehensible or violative of state law or regulation, does not constitute deprivation of a federally-protected right when it does not result in the imposition of "atypical hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 115 S.Ct. at 2300; *see also Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986).

Further, plaintiff has not alleged that the Rules Violation Report was filed in retaliation for plaintiff's exercise of constitutionally protected conduct.  McGuire's report is corroborated by Dr. Mangis's notes following the examination of plaintiff, in which he stated plaintiff was "belligerent," and that his behavior was "escalating."  Plaintiff has failed to demonstrate that the challenged disciplinary actions were not justified by legitimate penological goals.  Defendant has produced sufficient evidence to support the disciplinary action taken against plaintiff.  Defendant has also provided adequate support for his contention that the challenged disciplinary action was undertaken in pursuit of the legitimate penological purpose of maintaining prison discipline.  The court therefore recommends that defendant's motion for summary judgment on this claim be granted as well.

////

////

////

1  Accordingly, IT IS HEREBY ORDERED that plaintiff's May 21, 2007, motion (docket
2  no. 96), construed as a motion to compel, is denied.

3  For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

4  1. Plaintiff's May 21, 2007, motion, construed as a Rule 56(f) motion (docket no. 95), be
5  denied; and

6  2. Defendant's May 3, 2007, motion for summary judgment (docket no. 83) be granted.

7  These findings and recommendations are submitted to the United States District Judge
8  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days
9  after being served with these findings and recommendations, any party may file written
10 objections with the court and serve a copy on all parties.  Such a document should be captioned
11 "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections
12 within the specified time may waive the right to appeal the District Court's order. *Turner v.*
13 *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
14 Dated: February 1, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

13